## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

Case No. HG 09-00340

TERRY JOHN TRUDELL and
JULIE MARIE TRUDELL,

Debtors.

_____/

## OPINION RE: TRUSTEE'S APRIL 9, 2009 OBJECTION
## TO DEBTORS' CLAIM OF EXEMPTIONS

Jeff A. Moyer ("Trustee") has objected to the exemption of federal and state tax refunds now claimed by Terry and Julie Trudell. Trustee's objection was prompted by the Trudells' failure to disclose even an estimate of those refunds in the original schedules they filed in their case.

However, Trustee's objection has been rendered moot because of the Trudells' postpetition expenditure of the refunds after their receipt. The court will, though, schedule its own hearing to consider whether the Trudells' attorney should be sanctioned under Section 707(b)(4)(D)[1] because of the apparent inaccuracy in the originally filed schedules.

---

[1] 11 U.S.C. § 707(b)(4)(D). Unless otherwise designated, all further references to "Section _____," "Bankruptcy Code," or "Code," shall be to the Bankruptcy Code as currently amended. 11 U.S.C. §§ 101, *et seq.*

## BACKGROUND[2]

The Trudells filed their petition for Chapter 7 relief on January 15, 2009.  They also filed on the same day their statement of financial affairs and related schedules.[3]  Among what the Trudells had to provide was information concerning any tax refund they expected to receive for the prior year. Although the Trudells had not yet prepared their returns for that year, an estimate was nonetheless required.  Specifically, Item 21 of Schedule B requires disclosure of "Other contingent and unliquidated claims of every nature, including tax refunds . . . ."  It then directs the debtor to given an estimate of whatever is disclosed.

The Trudells' response to this inquiry was "None" - i.e., they did not expect to receive any refunds for 2008.  However, when the Trudells completed their returns only a few weeks later,[4] they determined that they were in fact entitled to a combined refund of over $5,000.

The Trudells did inform Trustee of the now anticipated refund when they met with him at the end of February.[5]  They did not, though, formally amend their schedules to reflect this change

---

[2]This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and W.D. Mich. LCivR 83.2.  The matter considered is also a core proceeding.  11 U.S.C. §§ 157(b)(2)(A) and (O).  Therefore, the court's decision is final subject only to appeal under 28 U.S.C. § 158.

The court conducted an evidentiary hearing.  The proofs consisted of Mr. Trudell's testimony and various exhibits.  What now follows are the court's findings of fact and conclusions of law.  FED. R. BANKR. P. 7052 and FED. R. CIV. P. 52(a)(1).

[3]"Except in a Chapter 9 municipality case, the debtor, unless the court orders otherwise, shall file the following schedules, statements, and other documents, prepared as prescribed by the appropriate Official Form . . . ."  FED. R. BANKR. P. 1007(b)(1).

[4]Although no actual filing date was established at the evidentiary hearing, the Trudells' federal return, which was admitted as an exhibit, is dated February 12, 2009.

[5]The Bankruptcy Code requires that a meeting of creditors be held shortly after the commencement of a debtor's case and that the debtor appear at that meeting for examination by the trustee.  11 U.S.C. §§ 341(a) and 343.  The Trudells' meeting was on February 24, 2009.

until several weeks after that meeting and nearly a month after the returns were prepared. Moreover, when the Trudells did make the formal amendment, they also amended the exemptions they had identified in the same schedules to include the entire refund as exempt.

Trustee concedes that the Trudells' 2008 tax refund qualifies for exemption under Section 522(d)(5).[6] Trustee also agrees that the Trudells have more than enough available under that subsection to cover the entire amount claimed. Nevertheless, Trustee has objected to the exemption being allowed.

First, Trustee maintains that the Trudells cannot under the bankruptcy rules exempt a subsequently disclosed asset by simply amending their original Schedule C to include it.[7] Second, Trustee contends that the Trudells acted in bad faith or recklessly when they estimated in their original schedules that they would not be receiving anything as a tax refund for 2008. Finally, Trustee asserts that the Trudells cannot now exempt the 2008 refund even if his other arguments fail because they have already spent what they received.[8]

## DISCUSSION

### A.   Bankruptcy Rules Argument

This is not the first time Trustee has contended that the bankruptcy rules do not permit the exemption of property through the subsequent amendment of Schedule C. *See In re Thomasma*, 399

---

[6]Section 522(d)(5), which is often referred to as the "wildcard" or "catch all" exemption under the federal scheme of exemptions, permits a debtor to remove from the bankruptcy estate whatever the debtor wants provided that the aggregate value of the items selected does not exceed a maximum amount. In this instance, the Trudells each had $11,200 available as their maximum.

[7]Schedule C is the specific schedule used by a debtor to claim his Section 522 exemptions.

[8]Trustee had also asserted that the Trudells were barred by the doctrine of laches from later amending their schedules to claim the refund as exempt. However, Trustee waived that argument immediately before the evidentiary hearing began.

3

B.R. 20 (Bankr. W.D. Mich. 2008).  Trustee's argument is based upon his "reconciliation" of Rule

1009(a),[9] which permits the amendment of schedules at any time, with Rules 1007(a) and 4003(a).

In Trustee's opinion, these latter rules limit what otherwise clearly appears to be a liberal policy of

amendment under Rule 1009(a) to only those instances where the debtor is in fact exempting assets

that did not become property of the estate until after the case was commenced.

The court rejected this argument in *Thomasma* and the court rejects it here for the same

reasons.

B.      Bad Faith, Concealment, or Recklessness

While Rule 1009 unquestionably provides an opportunity to claim a belated exemption, the

case law is equally clear that the privilege afforded by that rule is not to be abused.  For example,

the Sixth Circuit has held that the exemption of an interest through an amended Schedule C will not

be allowed if the amendment is in bad faith or if it otherwise appears that the debtor had previously

concealed the interest now claimed. *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984). *See

also*, *In re Millsaps*, No. 84-5935, 1985 WL 13737 (6th Cir. Sept. 30, 1985).  And *In re Colvin* holds

that even a reckless disregard of the debtor's duty to disclose can preclude a later attempt to exempt

a previously unreported asset.  288 B.R. 477, 482 (Bankr. E.D. Mich. 2003).

However, *Colvin* concluded that the debtors were reckless in that instance only after

considering the "totality of the circumstances." *Id*.  Specifically, the debtors there had known long

before the first meeting of creditors and in all likelihood even before they had prepared their

schedules that they would be receiving a $10,000 refund.  The debtors, though, did not disclose the

---

[9]FED. R. BANKR. P. 1009(a).  Unless otherwise indicated, all further citations in this opinion to "Rule
_____" will be to the Federal Rules of Bankruptcy Procedure.

4

refund in either their schedules or at the first meeting of creditors. Indeed, the trustee discovered the refund only upon examining the debtors at a special 2004 examination.[10]

The Trudells' conduct is not comparable. Unlike the Colvins, the Trudells had not filed or even prepared their tax returns at the time they filled out their bankruptcy schedules. Moreover, the Trudells have otherwise exhibited good faith in their dealings with Trustee. Trustee has not had to conduct a special examination of the Trudells nor have the Trudells disclosed the refund only after Trustee discovered the refund on his own. Rather, the Trudells purposely accelerated the preparation of their tax returns and then provided them to Trustee at the first meeting. In all, less than six weeks had passed between the commencement of their case and the disclosure of their tax refunds without any suggestion of bad faith or concealment apart from the Trudells' statement in their original Schedule B that they did not expect to receive a refund for the 2008 tax year.

Consequently, Trustee's objection to the Trudells' belated exemption of the tax refunds ultimately turns upon whether the Trudells' failure to provide an estimate in their original Schedule B is in and of itself enough to establish bad faith, or at the very least, recklessness so as to now deny the Trudells their exemption of the same. The court agrees with Trustee that the Trudells' omission of an estimate is serious, especially given that they ultimately received over $5,000 as a refund for that year. As *Colvin* observed, a debtor is obligated to provide all of the information required in the schedules he is to prepare. But *Colvin* also limits responsibility for falling short of this obligation to only intentional or reckless behavior and, in this instance, the court is satisfied that the Trudells'

---

[10]Rule 2004 provides that the court may order the examination of any entity concerning the debtor's property and the administration of the debtor's estate, among other things.

5

statement in their original Schedule B that they did not expect to receive a 2008 tax refund was at most careless.

In reaching this conclusion, the court treats the Trudells' attorney's involvement in the preparation of their schedules as a mitigating factor. A debtor is most certainly "imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely." *Colvin*, 288 B.R. at 480 (citation omitted). However, the issue here is not so much whether the Trudells failed in fulfilling this duty as it is whether they should be sanctioned for their failure through the denial of an exemption now claimed.[11] Moreover, if the sanction's purpose is to deter only the intentional or reckless preparation of schedules, then it is difficult to rationalize punishing a debtor who reasonably relied upon his attorney's assistance in their preparation.

This is not to say that a debtor is entitled to a free pass whenever an attorney or petition preparer assists him with his schedules. For example, the court in *Colvin* rejected the debtors' argument that they should be excused from not including the refund in their schedules because their attorney had supposedly failed to advise them that its disclosure was required. *Id.* at 483. However,

---

[11]Indeed, in *Colvin* the court was quite clear that it was imposing a sanction upon the debtors for their misconduct as opposed to simply adjudicating the propriety of an exemption claimed.

> Here the Court has found that the debtors' failure to disclose their tax refund was intentional or at least reckless. The question then becomes how to remedy that conduct appropriately in this case and how to deter such conduct in the future that would, if undeterred, evade the law and cheat creditors. The Sixth Circuit has stated, "When a court metes out a sanction, it must exercise such power with restraint and discretion.... The sanction levied must thus be commensurate with the egregiousness of the conduct." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996) (citation omitted).

*Id.* at 483.

6

the *Colvin* court was also very careful to point out that it was not adopting a per se rule; rather, each case still had to be decided upon its own facts so as to separate intentional or reckless omissions, which should be sanctioned, from inadvertent or even careless objections, which should not. *Id.* In particular, the court there concluded that the debtors' feigned reliance upon their attorney's advice (or, more accurately, lack of advice) was belied by their own conduct both in connection with the preparation of their schedules and in connection with missed opportunities to voluntarily correct the error thereafter.

But the facts here are different. The Trudells, unlike the Colvins, did not know at the outset of their case that they would in fact be receiving a refund. To the contrary, Mr. Trudell testified that he had come to the conclusion on his own that he and his wife would not be receiving anything for 2008 because of recent reversals in their fortunes. Moreover, this is not a situation where the debtor completed the statement of affairs and schedules line by line with the attorney in turn making himself available only to offer assistance when asked. The Trudells instead turned over all of their information to their attorney and he then assumed the responsibility for filling out the required forms. As for Item 21, there is no indication that Mr. Trudell had shared his conclusion concerning the 2008 tax refund with their attorney. Rather, the attorney testified that he had relied only upon his own expertise in deciding that "none" was the appropriate response for that portion of Schedule B.

The Trudells, of course, did have the opportunity to correct their attorney's error during their own review of what he had prepared at the final meeting before the filing of their case. And perhaps they could have been held accountable for what is most certainly a gross under-estimation of the refund in fact due had their attorney left Item 21 blank for further discussion. But their attorney's

7

independent decision that "none" was the correct response effectively eliminated whatever second guessing Mr. Trudell might have had concerning his own effort to determine the 2008 refund.

In sum, this court does not find the Trudells' failure to disclose in their original Schedule B a more accurate estimate of their 2008 tax refund to be either intentional or even reckless, especially when the Trudells' subsequent honesty in bringing this error to Trustee's attention is considered. Therefore, Trustee's objection on this basis is also denied.

Excusing the Trudells with respect to their part in preparing the schedules does not, though, address the separate issue of whether their attorney himself should be held accountable for the omitted estimate. Whether Rule 9011 applies to statements of affairs and schedules is debatable.[12] However, Section 707(b)(4)(D), which was added to the Code as part of the 2005 amendments, unquestionably imposes a duty upon the debtor's attorney to ensure the accuracy of his client's schedules.

> The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.[13]

---

[12]Although the certifications required by Rule 9011(b) cover both signed and unsigned documents, the specific exception of statement of affairs and schedules from the signing requirement of subpart (a) leaves some question as to whether schedules do in fact fall within the scope of Rule 9011. Moreover, the applicable certification made under Rule 9011(b)(3) does not quite fit, for it focuses upon "allegations and other factual contentions" made and their evidentiary support, which is in the realm of advocacy. But an attorney is seldom advocating a particular position when he helps a debtor in preparing his schedules. Rather, he is simply assisting the debtor in the collection and disclosure of what is hopefully accurate information.

[13]The phrase "filed with the petition" is ambiguous. It can be read either as applying to all schedules filed in connection with the debtor's case or as applying only to whatever schedules are filed at the same time as the petition. This court prefers the broader interpretation since an unscrupulous attorney could otherwise easily avoid a responsibility that Congress clearly intended to impose upon him by simply waiting a day before then filing his client's schedules. However, the question is moot in this instance because the Trudells filed their schedules simultaneously with their petition.

8

Moreover, the enforcement of this duty under the circumstances seems particularly appropriate, for a debtor's failure to disclose in his Schedule B his good faith estimate of tax refunds for which returns have yet to be filed is a vexing issue in both this district and others. The court is aware of dozens of objections that Trustee has filed within the last year alone where debtors, with counsel's assistance, have represented in their original schedules that no refund is expected only to have those schedules later amended to disclose that a substantial refund is in fact owed. The inability to accurately calculate taxes midyear is frequently offered as an excuse for this practice. However, as this court observed in *Thomasma*, Item 21 does not require a precise calculation. A good guess will do. *Id.* at 24.[14] Therefore, if a good faith estimate can be made, then counsel must insist upon debtor including that estimate in his schedules in order to comply with the certification now required of counsel.

Section 707(b)(4)(D) itself provides no guidance as to how violations of the certification made are to be enforced. However, subparts (b)(4)(A) and (b)(4)(B) of the same section reference the procedure used to enforce infractions under Rule 9011 and Section 707(b)(4)(D) certainly parallels both these other subsections and Rule 9011. Accordingly, the court will initiate a separate hearing under Section 707(b)(4)(D) against the Trudells' attorney much as it would if it were considering a sanction against him under Rule 9011. *Cf. Lafayette v. Collins (In re Withrow)*, 405 B.R. 505 (1st Cir. B.A.P. 2009). In scheduling that hearing, the court has taken into consideration the fact that the Trudells' attorney did testify in connection with this hearing and that his testimony was that he had honestly believed that the Trudells were not entitled to a 2008 tax refund when he

---

[14]Another excuse has been supposed confusion as to whether the current year's refund is property of the estate. But Schedule B, as currently written, avoids whatever confusion there might be by requiring an estimate of the current year's refund in any event.

9

marked "None" in response to Item 21 of Schedule B. However, he gave that testimony without the benefit of actually reviewing his work papers. Moreover, his recollection has not been tested against the recollection of his staff or, for that matter, against how regularly he has answered "None" in response to Item 21 in other cases where he has completed schedules on behalf of his debtor clients.

C.    Exemption of Property Already Transferred

Under the former Bankruptcy Act, exempt property never became property of the estate. *Liberty State Bank & Trust v. Grosslight (In re Grosslight)*, 757 F.2d 773, 775 (6th Cir. 1985); *see also* 5 *Collier on Bankruptcy* ¶ 541.LH. [1]-[3] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009). However, the Bankruptcy Code reversed course and, as a consequence, all property of the debtor, including that which may be exempted, now becomes the estate's property immediately upon the commencement of the case. The debtor then receives back from the estate whatever is thereafter allowed as his exemptions. *Owen v. Owen*, 500 U.S. 305, 308, 111 S. Ct. 1833, 1835 (1991). *Barroso-Herrans v. Lugo-Mender (In re Barroso-Herrans)*, 524 F.3d 341, 344 (1st Cir. 2008).

The Code's approach certainly has its merits. But this approach also has the disadvantage of the estate literally owning all of the debtor's possessions until the exemption process is completed. The trouble, of course, is that this fiction does not comport with reality. Chapter 7 debtors do not give up all their worldly possessions at the outset of a case and then wait in a state of destitution until whatever they have claimed as exempt is returned to them by the trustee. Rather, newly filed debtors

10

as a practical matter remain in possession of everything, whether exemptible or not, unless and until the trustee demands control of the same.[15]

This works well as long as the debtor himself does not attempt a postpetition transfer of the claimed property prior to the completion of the exemption process. But what if that process has not concluded when the transfer occurs? In this instance, the Trudells had spent some of the refund even before Trustee had filed his objection and they then spent the rest shortly thereafter. As a consequence, Trustee legitimately asks whether there is anything for the Trudells to now remove from the estate as an allowed exemption.[16]

Section 522(b)(1) provides in pertinent part that "an individual debtor may exempt from property of the estate" certain specified items. For example, if the federal exemption scheme is elected, a debtor may exempt the estate's interest in "one motor vehicle" worth up to $3,225.00, provided the estate acquired that interest from the debtor. 11 U.S.C. § 522(d)(2). However, the exemption is not accomplished - i.e., the interest in the vehicle is not removed from the estate and returned to the debtor for his enjoyment - until all parties in interest, including the trustee, have had an opportunity to object. 11 U.S.C. § 522(l). Therefore, it follows that if the debtor were to have transferred what is now the estate's interest in his car either before the trustee had an opportunity to

---

[15]Only Chapter 13 actually recognizes the debtor's continued postpetition possession of the estate's property. 11 U.S.C. § 1306(b). The "debtor-in-possession" concept in both Chapter 11 and Chapter 12 also permits the debtor to remain in legitimate possession postpetition. 11 U.S.C. §§ 1107 and 1203.

[16]Actually, Trustee did not know whether the Trudells had spent their tax refunds at the time of his April 9, 2009 objection and, as such, this aspect of his objection was based only upon speculation. Indeed, Trustee learned for the first time at the evidentiary hearing itself that the Trudells had in fact spent the entire refund during the spring and summer of last year.

11

object or while the trustee's objection was pending,[17] then there is nothing to return to him as exempt when the process is completed. Moreover, as Trustee also points out, property that has been voluntarily transferred from the estate but then recovered as a postpetition transfer is no longer eligible for exemption. *Cf.* 11 U.S.C. § 522(g).[18]

Therefore, the court agrees with Trustee that the Trudells no longer have anything to exempt. However, it seems that the appropriate relief in this instance is not, as Trustee requests, a denial of the exemption claimed but rather simply a recognition that Trustee's objection has been rendered moot by the Trudells' premature expenditure of the refund claimed. Indeed, it is fair to ask why the court even needed to address Trustee's actual objections to the exemptions claimed given that the refunds are no longer part of the estate and would not be exemptible even if they are ultimately recovered.

This is the same point made by my colleague, Judge Dales, in *In re Busher*, 2009 WL 3635877 (Bankr. W.D. Mich.). Like the instant case, *Busher* involved the trustee's challenge of a belated exemption claimed by the debtor in a tax refund for which no estimate had been provided

---

[17]Again, property of the estate is not actually removed from the estate unless the exemption, once claimed, is not challenged within the time required under Rule 4003(b) or, if challenged, the objection is resolved in the debtor's favor.

[18]      (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
          (1)(A) **such transfer was not a voluntary transfer** of such property by the debtor; and
              (B) the debtor did not conceal such property; or
          (2) the debtor could have avoided such transfer under subsection (f) (1)(B) of this section.

(Emphasis added). *See also* 11 U.S.C. § 522(h).

12

in the debtor's original schedules. Judge Dales concluded in *Busher* that the trustee's actual objections to the exemptions claimed were not ripe because the refunds had already been spent.

I agree with *Busher*. There is at this point no good reason to address the merits of Trustee's actual objections to what the Trudells had once wanted to exempt. Trustee's focus should now be upon whether the Trudells can still be held accountable under Section 542 for their premature expenditure of the refunds[19] and whether avoidance and recovery is otherwise possible through Sections 549 and 550.

D.     Violation of the Automatic Stay

Trustee also contends that the Trudells' unauthorized expenditure of the 2008 tax refunds was in violation of the automatic stay. In particular, Trustee argues that the Trudells' expenditure constituted acts "to exercise control over property of the estate" in violation of Section 362(a)(3).

However, Trustee seems to concede in his trial brief that the Trudells' alleged violations of the automatic stay do not establish an independent reason for denying their exemption of the tax refunds; rather, it appears that Trustee's contention is only that the Trudells' violation of the automatic stay is further proof of the Trudells' bad faith concerning the exemption claimed in the same. Frankly, the court is hard-pressed as to how the Trudells' violation of the automatic stay would be probative of their bad faith short of them declaring at the time of each expenditure that they knew they were violating the stay but didn't care. Or, to put it differently, while the Trudells' expenditure of the refunds may have been a technical violation of the automatic stay, so too would

---

[19]As already discussed, Trustee has known of the Trudells' entitlement to over $5,000 in tax refunds since February of 2009. However, he inexplicably did not take control of the refunds even though he had come to the conclusion at least as early as April 9, 2009 (*i.e.*, the date he filed his objection) that the Trudells' claimed exemption of that refund should not be allowed.

the use of their car have been a violation unless and until its exemption from the estate became final. Moreover, whatever probative effect the Trudells' violation of the automatic stay may have had with respect to their alleged bad faith is offset by not only how the Trudells have comported themselves in disclosing the tax refunds but also Trustee's own unexplained failure to take control of the refunds once he learned of them back in February 2009.[20]

## CONCLUSION

For the reasons stated herein, Trustee's objection is moot. The court will prepare a separate order consistent with this opinion.

_2/19/10_

Hon. Jeffrey R. Hughes
United States Bankruptcy Judge

Signed this __19th__ day of __February, 2010__ ,
at Grand Rapids, Michigan.

---

[20]Trustee does mention in his brief that the Trudells could be monetarily liable under Section 362(k) for violating the automatic stay. However, the court questions whether Trustee would even have standing under that subsection to make such a claim since subsection (k) limits recovery to only individuals injured by the stay's violation and the estate, upon whose behalf Trustee has brought this objection, is not an individual.

14